[No. 12191. Department Two. December 22, 1914.]

THE STATE OF WASHINGTON, *Respondent*, v. CHARLES
MERRILL, *Appellant*.[1]

BUILDING AND LOAN ASSOCIATIONS—OFFENSES — DOING BUSINESS WITHOUT AUTHORITY—INFORMATION — SUFFICIENCY — STATUTORY PROVISIONS. An information charging the defendant, as an agent and employee, with conducting a savings and loan business in this state when the company he represented was not authorized to do business in this state, by then and there selling and knowingly causing to be sold and issued to one L. one certain contract and share of his said company, then and there being a foreign building and loan association not theretofore or then lawfully engaged in said business in this state, sufficiently states an offense under 3 Rem. & Bal. Code, § 3601-23, forbidding such companies from conducting the business of a savings and loan association in this state, and Id., § 3601-27, providing that every agent or employee who shall willfully violate any of the provisions of the act shall be guilty of a misdemeanor; but it does not state an offense under Id., § 3601-22 relating to the sale of "stock" of such an association while it did not have on deposit with the state auditor the required amount of securities; since the sale of "capital stock" was not charged, but only the sale of a contract certificate share, and the doing of business in this state without authority.

CONSTITUTIONAL LAW—POWERS—DELEGATION OF JUDICIAL AND LEGISLATIVE POWERS—STATE AUDITOR—CONTROL OVER BUILDING AND LOAN ASSOCIATIONS. Building and loan and savings and loan associations, being in their nature public associations doing business with the public, and subject to the control of the legislature, the state auditor may be empowered to examine and audit their accounts and in connection therewith perform such other duties as are necessary to a

[1]Reported in 144 Pac. 925.

full and fair control of their business; hence 3 Rem. & Bal. Code, § 3601-1 *et seq.*, containing such provisions, is not unlawful delegation of judicial and legislative powers to the state auditor, and does not violate Const., art. 3, § 20, providing that the state auditor shall be auditor of public accounts, and shall have such other powers and perform such other duties "in connection therewith" as may be prescribed by law.

COMMERCE—WHAT CONSTITUTES—CONTRACTS OF SAVINGS AND LOAN ASSOCIATIONS. The usual contracts of foreign savings and loan associations are not interstate nor foreign commerce, and when delivered, become local transactions, subject to and governed by the local law; hence the savings and loan association act is not a burden upon interstate commerce.

CONSTITUTIONAL LAW—DUE PROCESS — DISCRIMINATION — REGULATION OF FOREIGN CORPORATIONS. Since a foreign corporation has no legal existence beyond the limits of its home state, except as expressly granted to it by the laws of another state, the exclusion of foreign building and loan and savings and loan associations from doing business in this state is not in violation of the due process of law, denial of equal protection, and unlawful discrimination clauses of the Federal constitution.

CONSTITUTIONAL LAW—CLASS LEGISLATION—BUILDING AND LOAN ASSOCIATIONS—REGULATION. The building and loan and savings and loan association act, 3 Rem. & Bal. Code, § 3601-1 *et seq.*, is not void as class legislation in that it makes it a crime for any person within the state to sell stock of such associations, while the stock of other associations may be sold, since it does not discriminate against corporations authorized to do business in this state.

BUILDING AND LOAN ASSOCIATIONS—WHAT ARE—STATUTORY PROVISIONS. Where a foreign corporation is clearly a savings and loan association and has all the features of what is commonly known as a building and loan association, and its contracts are of the character of a savings and loan association, it is amenable to the "building and loan and savings and loan" act, 3 Rem. & Bal. Code, § 3601-1 *et seq.*

BUILDING AND LOAN ASSOCIATIONS—OFFENSES—"AGENTS"—CRIMINAL RESPONSIBILITY. Where a representative of a foreign corporation was confessedly acting as the "correspondent" of the company in this state, selling shares and taking contracts in his own name, receiving a commission therefor, and transferring them to the persons purchasing them, and authorized to do so by the company, he was the "agent" of the company, within the meaning of 3 Rem. & Bal. Code, § 3601-27, making it a misdemeanor for an "agent" of such a company to willfully violate any of the provisions of such act, prohibiting such companies from doing business in the state.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered January 20, 1914, upon a trial before the court, a jury being waived, and a conviction of a misdemeanor in violating the act relating to building and loan associations. Affirmed.

*John W. Roberts* and *Philip Tworoger*, for appellant.
*John F. Murphy* and *H. B. Butler*, for respondent.

MOUNT, J.—The appellant was charged with a misdemeanor under an information as follows:

"He, said Charles Merrill, in the county of King, state of Washington, on the 28th day of July, 1913, being then and there the agent and employee of The National Mercantile Company Limited, a corporation duly organized and existing under and by virtue of the laws of the Province of British Columbia, in the Dominion of Canada, did then and there wilfully and unlawfully violate and fail to comply with the provisions of an act of the legislature of the state of Washington, passed and approved February 14, 1913, and March 19, 1913, respectively, entitled 'An Act relating to the organization and to the management, regulation and control of building and loan and savings and loan associations and societies, etc.' In that he did then and there wilfully and unlawfully conduct a savings and loan association business, said business being in the form and of a character similar to that authorized by the foregoing act by then and there selling and knowingly causing to be sold and issued to one F. H. Lieben one certain contract and share of The National Mercantile Company Limited, said contract and share being more particularly described as No. L. P. Issue 1 Series 5, said The National Mercantile Company Limited, being then and there a foreign building and loan association not theretofore or at any time lawfully engaged in the state of Washington in the business of a savings and loan association."

After a demurrer to this information was overruled, the cause was tried to the court, a jury having been waived. The defendant was found guilty as charged and a fine of $200 was adjudged against him. This appeal followed.

It is admitted by the appellant that The National Mercan-
tile Company Limited named in the information, is a corpora-
tion organized and existing under and by virtue of the laws
of the province of British Columbia, in the Dominion of Can-
ada; that its home office is at Vancouver, B. C.; and from that
office it transacts all its business; that the company, as a part
of its business, issues what is called a loan contract.

The contention on the part of the company is, so far as
the state of Washington is concerned, that it sells its con-
tracts through certain persons whom it calls correspondents;
that Merrill was its correspondent in Seattle. The contention
further is that on July 28, 1913, one Lieben went to Mr.
Merrill, the appellant, and made application to purchase one
of the company's loan contracts; that Merrill took his appli-
cation and told Mr. Lieben that he had to send to Vancouver,
B. C., for the contract; that it would be executed in Vancou-
ver within a few days and sent over to Seattle. This contract
was executed and forwarded to Merrill, and was delivered
by Merrill to Lieben.

It was shown at the trial that The National Mercantile
Company Limited is not authorized under the act referred to
in the information to do a savings and loan business within
the state of Washington. It has, however, filed articles of
incorporation with the secretary of state under the general
incorporation law. Its articles of incorporation, which are
in the record, indicate that the company is authorized to do
most any kind of business. So far as this record shows, it is
engaged principally in the building and loan, or savings and
loan business.

It is insisted by the appellant that the information is filed
under § 22 of the act in question (Laws 1913, ch. 110, p.
343), which section is as follows:

"Any officer, director or agent of any savings and loan
association or any other person who shall sell or issue or
knowingly cause to be sold or issued to any resident of this
state, any stock of said association while said association

does not have on deposit with the state auditor as required by this act, securities of the value and at the time herein prescribed, or while such association shall not have the certificate of the state auditor authorizing it to do business as herein prescribed shall be guilty of a gross misdemeanor." 3 Rem. & Bal. Code, § 3601-22.

Counsel for the state insist that the information was filed under the next succeeding section (§ 23), which provides:

"After the passage and approval of this act, it shall be unlawful for any person, association or persons or domestic associations not already organized and doing business under sections 3601 to 3638, both inclusive, of Remington & Ballinger's Annotated Codes and Statutes of Washington, to conduct a business in the form or of a character similar to that authorized by this act without first incorporating under this act. After the passage and approval of this act no foreign association not already lawfully engaged in the State of Washington in the business of a savings and loan association shall be permitted to conduct such a business in this state. . . ." 3 Rem. & Bal. Code, § 3601-23.

Section 27 (Id., § 3601-27) of the act provides that every agent or other employee who shall willfully violate any provision of the act shall be guilty of a misdemeanor.

In order to hold that the information was filed under § 22, and is governed by that section, it would be necessary to hold that "any stock of said association" means contract certificates which represent stock in the association, and does not mean capital stock of the association. We find it unnecessary to construe this section, or to hold that the information was filed under the provisions of this section; for it is clear that the information charges the defendant with conducting a savings and loan business by then and there selling and knowingly causing to be sold and issued to one F. H. Lieben one certain contract and share of The National Mercantile Company Limited. It was not the capital stock of the association that was sold in this instance, but a contract certificate share. In other words the defendant is charged here with conducting a savings and loan business when the company or business

which he represents was not authorized to do business within this state. Clearly it seems to us that the information was filed and intended to be filed under the provisions of §§ 23 and 27 (Id., §§ 3601-23, 3601-27).

The principal contention of the appellant is that the act named in the information is unconstitutional and void for several reasons, as follows:

(1) That the act delegates both judicial and legislative power to the state auditor.

(2) That it is in violation of § 8, art. 1, of the constitution of the United States and of the 14th amendment, in that it imposes a burden upon interstate commerce.

(3) That it is in violation of the 14th amendment to the constitution of the United States because it abridges the privileges and immunities of citizens of the United States; and because it deprives investment companies or citizens of property without due process of law, and deprives them or other persons similarly situated of the equal protection of the law, and denies that freedom of contract guaranteed by the constitution; and is class legislation.

(4) That it is in violation of art. 2, § 19, of the constitution of this state.

We shall notice these contentions briefly.

The constitution of this state at § 20, art. 3, provides:

"The auditor shall be auditor of public accounts, and shall have such powers and perform such duties in connection therewith as may be prescribed by law. . . ."

The appellant argues that no other duties can be imposed upon the state auditor under this constitutional provision than the duties to audit public accounts, and such other duties in connection therewith as may be prescribed by law. For the purpose of this case, we shall concede that this is the plain meaning of the constitutional provision quoted. Counsel for the appellant then set out the different sections of the act under consideration, and argue that the provisions of the act are contrary to the constitutional provision above quoted

for the reason that it makes a judicial and executive officer of the auditor, and that his decisions are final. Many pages of the appellant's brief are taken up with this discussion. We think it is sufficient to say that these building and loan or savings and loan associations, as provided for in this act, are within the control of the legislature of the state. They are, in their nature, public associations doing business with the public, as banks, insurance companies and other trust companies, and are subject to regulation on the same theory that these other trust companies are subject to lawful regulation. *State Savings & C. Bank v. Anderson*, 165 Cal. 437, 132 Pac. 755.

The accounts of these savings and loan associations are, therefore, in their nature public. We think it is not overstating the constitution to say that the legislature has the power under this provision to authorize the state auditor to examine and audit accounts of such trust companies, and in connection therewith to perform such duties as are necessary to a full and fair control of the business of such associations. It is true that some of the duties placed upon the auditor by the provisions of this act may be said to be in their nature executive, and possibly judicial; but they are only such as are accorded to every other officer having control of that class of business. The auditor is authorized, under the terms of the act, to examine into the accounts of such corporations to determine the financial standing of the stockholders, and to determine the responsibility of the incorporators, and the character and general fitness thereof. These requirements necessitate the exercise of discretion and judgment, but are not necessarily judicial or executive as these terms are used in the constitution. They are ministerial in their character. When an account is presented to the auditor to be allowed or rejected, he must base his final determination upon his judgment. This is, in a sense, judicial. When he issues a warrant in payment of an account which he has approved, this is in a sense an executive act. But these acts are acts in con-

nection with his duties as auditor and are ministerial acts. The same is true of the examination and the control of these savings and loan associations. The legislature we think undoubtedly had the right to impose such duties in connection with the duties of auditor as were necessary to determine the financial standing and character of the business and of the persons connected therewith as would insure the people of the state a solvent going concern. Notwithstanding the many authorities and technical reasoning presented by the appellant in his brief, we are satisfied that the legislature was authorized to make the state auditor a general supervising officer over this class of corporations, and that the act is not void on that account.

It is next argued that the act is an unlawful interference with and a burden upon interstate and foreign commerce. Counsel argue, under this head, that it is without the power of the state to prevent outside companies or corporations from selling its contracts within this state. If these contracts were interstate and foreign commerce, there would be force in this contention. But it is plain we think that a contract of the nature of a savings and loan contract is neither interstate nor foreign commerce. In the case of *Paul v. Virginia*, 8 Wall. 168, the supreme court of the United States said:

"Issuing a policy of insurance is not a transaction of commerce. The policies are simple contracts of indemnity against loss by fire, entered into between the corporations and the assured, for a consideration paid by the latter. These contracts are not articles of commerce in any proper meaning of the word. They are not subjects of trade and barter offered in the market as something having an existence and value independent of the parties to them. They are not commodities to be shipped or forwarded from one state to another, and then put up for sale. They are like other personal contracts between parties which are completed by their signature and the transfer of the consideration. Such contracts are not interstate transactions, though the parties may be domiciled in different states. The policies do not take effect— are not executed contracts—until delivered by the agent in

Virginia. They are, then, local transactions, and are governed by the local law. They do not constitute a part of the commerce between the states any more than a contract for the purchase and sale of goods in Virginia by a citizen of New York whilst in Virginia would constitute a portion of such commerce."

In *Hooper v. California*, 155 U. S. 648, the same court said:

"If the power to regulate interstate commerce applied to all the incidents to which said commerce might give rise and to all contracts which might be made in the course of its transaction, that power would embrace the entire sphere of mercantile activity in any way connected with trade between the states; and would exclude state control over many contracts purely domestic in their nature.

"The business of insurance is not commerce. The contract of insurance is not an instrumentality of commerce. The making of such a contract is a mere incident of commercial intercourse. . . ."

In *Nathan v. Louisiana*, 8 How. 73, it was held that a broker dealing in foreign bills of exchange was not engaged in commerce; that a state tax on money or exchange brokers was not void as a regulation of commerce. The same is true of these contracts. The National Mercantile Company Limited mentioned in the information, issued a contract in the usual form of building and loan or savings and loan contracts. The contract provided that, upon a certain number of monthly payments a certain loan would be made in its order upon the contract. That, after a certain number of payments, the contract would be matured, or the loan would be paid. It is the usual form of savings and loan contracts; and is like a policy of insurance which is to be paid upon the happening of a particular event and depends altogether upon the performance of the contract and of the responsibility of the parties. It is in no sense interstate commerce.

It is next argued that the act is in violation of the due process of law, denial of equal protection, and unlawful dis-

crimination clauses of the constitution of the United States
and of the state. There is clearly no merit in this contention.
The National Mercantile Company Limited is not a citizen of
this state. It has not been authorized by the state to do the
class of business that the accused was attempting to do in this
state. There can be no doubt that a corporation is a crea-
ture of the laws of the state where it is created, and has no
legal existence beyond the limits of such state, except such as
are granted to such corporations by the laws of the states in
which such corporations apply for permission to carry on
their business. As was said in *Pembina Consol. Silver Min. &
Milling Co. v. Pennsylvania*, 125 U. S. 181:

"It was decided long ago, and the doctrine has been often
affirmed since, that a corporation created by one state cannot,
with some exceptions, to which we shall presently refer, do
business in another state without the latter's consent, express
or implied. In *Paul v. Virginia*, 8 Wall. 168, this court,
speaking of a foreign corporation, (and under that definition
the plaintiff in error, being created under the laws of Colo-
rado, is to be regarded,) said: 'The recognition of its exist-
ence even by other states, and the enforcement of its contracts
made therein depend purely upon the comity of those states,—
a comity which is never extended where the existence of the
corporation, or the exercise of its powers are prejudicial to
their interests, or repugnant to their policy. Having no
absolute right of recognition in other states, but depending
for such recognition and the enforcement of its contracts upon
their assent, it follows as a matter of course that such assent
may be granted upon such terms and conditions as those states
may think proper to impose. They may exclude the foreign
corporation entirely; they may restrict its business to parti-
cular localities; or they may exact such security for the per-
formance of its contracts with their citizens as in their judg-
ment will best promote the public interests. The whole mat-
ter rests in their discretion. . . .'

"The only limitation upon this power of the state to ex-
clude a foreign corporation from doing business within its
limits, or hiring offices for that purpose, or to exact condi-
tions for allowing the corporation to do business or hire offi-
cers there, arises where the corporation is in the employ of

the federal government, or where its business is strictly commerce, interstate or foreign. The control of such commerce, being in the federal government, is not to be restricted by state authority."

Authorities might be duplicated indefinitely upon this question, but there is no necessity therefor. The existence of this company within the state was upon condition that it should not do a savings and loan association business, because that business was prohibited to foreign corporations. At the time it filed its articles with the secretary of state, it did not attempt to comply with the savings and loan association act, because it was prohibited from so doing by that act. As a citizen of this state, the appellant and the company which he represented were entitled to the privileges and immunities of citizens under like conditions and no more.

It is next argued that the law is void as class legislation, because it undertakes to make it a crime for any person within the state to sell stock of building and loan associations while the stock of other kinds of associations may be sold. The act clearly does not make it a crime to sell the stock of building and loan associations which are organized under the laws of this state, or which properly do business within the state. It simply says that where a corporation is not authorized to do business within this state, its contracts and its stock shall not be sold within the state. The act is not discriminatory. There is no merit in this contention.

It is next argued that The National Mercantile Company Limited is not a building and loan association. It is possible that it is not a building association, but it is clearly a savings and loan association, and has all the features of what is commonly known as a building and loan association. The contracts offered in evidence make this clear. This is not a question of law. It is one entirely of fact. The contract issued by the appellant in this case is of a savings and loan character. It is needless to set out the record showing that fact.

It is lastly argued that there is no proof of the crime. The concessions of the appellant as stated heretofore in this opinion, show that he was acting, not as an agent as he says, but as a local correspondent of The National Mercantile Company Limited.    He was confessedly selling their shares, taking the contract in his own name, receiving a commission therefor, and then transferring them to the person purchasing.    In short, he was authorized by the company to do and was doing by indirection what he was prohibited from doing directly.    He was clearly an agent of the company.    The company held him out as an agent in their advertising matter. And there can be no doubt under these facts that he was a recognized acting agent, and is liable under the statute.

We find no merit in any of the contentions of the appellant, and the judgment is therefore affirmed.

CROW, C. J., MAIN, FULLERTON, and ELLIS, JJ., concur.