[No. 43705.    En Banc.    April 1, 1976.]

ROBERT V. GRAHAM, ET AL, *Petitioners*, v. STATE BAR ASSOCIATION, *Respondent.*

*Slade Gorton, Attorney General, Robert F. Hauth, Senior Assistant*, and *Rodney Carrier, Assistant*, for petitioners.

*Davis, Wright, Todd, Riese & Jones,* by *Bradley T. Jones* and *Charles A. Goldmark,* for respondent.

UTTER, J.—Certiorari was granted by this court to review an order quashing a subpoena duces tecum sought by the

State Auditor, petitioner herein, as part of his effort to obtain records with which he could conduct a postaudit of the respondent Washington State Bar Association. The trial court concluded the applicable statutes authorized petitioner to conduct the audit but that he was prohibited from doing so by the separation of powers doctrine. We hold the bar association is not a state agency or state department within the meaning of the applicable statutes, that only excess receipts from the admission fund for new lawyers are subject to postaudit and that the doctrine of separation of powers forbids the exercise by the state legislature of the power to audit funds collected by the bar.

In August 1969, petitioner conducted a postaudit of respondent. No legal challenge was made to this audit and a report was issued in March 1970. In November 1974, a second postaudit was attempted. On this occasion, however, respondent refused access to all records except those relating to the "admission to the bar examination fund." Faced with the bar's refusal to produce the desired books and papers, the Auditor sought issuance of a subpoena as provided by RCW 43.09.330. The trial court's refusal to issue the subpoena raises the legal issues now before this court.

The Washington State Auditor is a member of the executive branch of government and has only such powers as are conferred by the legislature. He is the "auditor of public accounts, and shall have such powers and perform such duties in connection therewith as may be prescribed by law." Const. art. 3, § 20. These provisions confer no constitutional or implied powers. The office possesses no powers other than statutory powers specifically granted. *Yelle v. Bishop*, 55 Wn.2d 286, 297, 347 P.2d 1081 (1959).

Statutory authority for the postaudit is claimed by the Auditor under the language of RCW 43.09.290 and 43.88.160(3) which specify those organizations subject to a postaudit. RCW 43.09.290 defines "state department" as "every other office, officer, department, board, council, committee, commission, authority, or agency of the state government . . . supported, wholly or in part . . . by

the levy, assessment, collection, or receipt of fines, penalties, fees, licenses . . . or other income provided by law . . ." Under the 1959 budget and accounting act, the Auditor also is empowered to "examine the books and accounts of any agency, [or] official . . . charged with the receipt, custody or safekeeping of public funds." RCW 43.88.160(3)(a). The Auditor is likewise directed to "[r]eport to the legislature the results of current post audits that have been made of the financial transactions of each agency . . ." RCW 43.88.160(3)(a). "Agency" is defined in part as a "board" and "public funds" in part as "all moneys . . . whether held in trust or for operating purposes and collected or disbursed under law, whether or not such funds are otherwise subject to legislative appropriation." RCW 43.88.020(4) and (5).

The critical inquiry is whether the bar association is a "state department" or "agency" within the meaning of the statutes. Petitioner treats as determinative the characterization of the Washington State Bar Association as "an agency of the state" in the State Bar Act of 1933, RCW 2.48.010 *et seq.* However, it is inconceivable that the legislature in 1933 intended this reference, in itself, to sanction an audit of that organization since the auditing statutes were adopted only in 1941 and succeeding years. Moreover, the legislature has given the term "agency" a variety of meanings. *See, e.g.,* RCW 42.17.020, 42.18.030, 42.30.020, 43.17.120-.200. In *State ex rel. Tattersall v. Yelle,* 52 Wn.2d 856, 863, 329 P.2d 841 (1958), this court noted that the term "state officer" is used in several different ways in the constitution and hence its meaning "may vary according to the context in which it is used." Similarly, the meaning of the term "agency" depends on its context. Thus, the reference to the bar association as "an agency of the state" in the State Bar Act of 1933 does not control the applicability of the auditing statutes to that organization.

This conclusion is further supported by the legislative history of the State Bar Act, RCW 2.48. The Washington State Bar Association existed as a voluntary pro-

fessional association between 1888 and 1933. Admission and discipline of attorneys was administered by the Supreme Court or a board of state bar examiners during that time. In 1933, the Washington State Bar Act was adopted by the legislature. The committee of the bar created to investigate their incorporation reported "[i]n view of the fact that our state constitution prohibits the creation of corporations by special act [Const. art. 12, § 1; art. 2, § 28] and inasmuch as our courts have not yet passed upon the question of whether or not public corporations are excepted from this provision, the Act submitted was drafted so as to avoid any question on this score and provides for the creation of the Bar as an association only and as a state agency." Thus, the description "agency of the state" was included in the act for limited purposes not affecting the scope of the auditing statutes.

■ The determination of whether the Washington State Bar Association is included within the terms of the act requires ascertainment of legislative intent. The intent of lawmakers must be abstracted from a consideration of all the provisions of an act and the court may not place a narrow, literal, and technical construction upon a part only of a statute and ignore other relevant parts. *State v. Rinkes*, 49 Wn.2d 664, 667, 306 P.2d 205 (1957). The language of a statute must be read in context with the entire statute and construed in a manner consistent with the general purpose of the statute. *Nationwide Papers, Inc. v. Northwest Egg Sales, Inc.*, 69 Wn.2d 72, 76, 416 P.2d 687 (1966).

■■ The Attorney General disclaims authority on the part of the state to conduct a performance audit of the Washington State Bar Association. A performance audit as defined in RCW 43.88.160 (3) is an examination of the effectiveness of the administration, its efficiency and its adequacy in terms of the programs of agencies as previously approved by the legislature. Its purpose is to determine whether the affected agency or state officer has discharged his responsibility to faithfully, efficiently, and effectively

administer any legislative purpose of this state. *See* RCW 44.28.085. The authority and responsibility to conduct such an examination is vested in the legislative budget committee as provided by RCW 44.28.085. That statute authorizes the legislative budget committee to make management surveys and program reviews as to every public body, officer, or employee subject to the provisions of RCW 43.09.290 through RCW 43.09.340, the postaudit statutes. The committee receives copies of all postaudits conducted by the State Auditor from which appropriate recommendations may be made to the legislature. RCW 44.28.085. Consequently, those agencies and accounts subject to performance audits, as well as management survey and program reviews, are by definition the same agencies and accounts which are also subject to postaudits. (While postaudits may be conducted also under the authority of RCW 43.88, the definitions in RCW 43.09.290-.340 are at least coextensive with, if not more inclusive than, the definitions in RCW 43.88.) Therefore, to exclude an organization from a performance audit is to exclude it from postaudit as well.

It is apparent why the Attorney General disclaims the authority of petitioner to conduct a performance audit of the Washington State Bar Association. That association is responsible to the Supreme Court, not the legislature or an agency of the executive branch, for the delineation of its responsibilities in the admission, discipline, and enrollment of lawyers. *In re Bruen*, 102 Wash. 472, 172 P. 1152 (1918); *In re Schatz*, 80 Wn.2d 604, 497 P.2d 153 (1972). With respect to the organization's other programs, it is the Board of Governors, elected by the bar association members, not the legislature, that determines what activities it will engage in. If these programs are not efficiently and adequately managed, the membership can select new board members. There are no legislative standards established for the exercise of discretion in the expenditure of funds by the Board of Governors of the bar. Complete discretion is conferred on the board in the collection and disbursement

of all association funds. RCW 2.48.050(5) and (7).[1] These funds are expended for a variety of purposes, not the subject of legislative concern, the sole aim of which is improvement in the quality of the practice of law.[2]

The funds needed for operation of the bar association are not provided by legislative appropriation. In two areas, a $2

[1] RCW 2.48.050:

"The said board of governors shall have power, in its discretion, from time to time to adopt rules

". . .

"(5) concerning the collection, the deposit and the disbursement of the membership and admission fees, penalties, and all other funds; and

". . .

"(7) providing for all other matters, whether similar to the foregoing or not, affecting in any way whatsoever, the organization and functioning of the state bar. Any such rule may be modified, or rescinded, or a new rule adopted, by a vote of the active members under rules to be prescribed by the board of governors."

[2] An affidavit submitted by respondent states in part:

"Income received by the Bar Association is disbursed for the following purposes, functions, services and responsibilities:

"1. The Bar News 2. Committees* 3. Rent 4. Clients Security Fund 5. Conferences & Meetings 6. Telephone 7. Postage 8. Office Supplies 9. The Disciplinary Program 10. Office Equipment 11. Public Affairs 12. Lawyer Referral Service 13. Printing 14. Local Bar Presidents 15. Public Relations 16. Membership mailings 17. Sections** 18. Headquarters Improvements 19. Appropriations*** 20. Insurance 21. Audit 22. Legal Intern Program 23. Office Equipment Maintenance 24. Library 25. Board of Elections 26. Bar Examinations and Admissions Program 27. Continuing Legal Education Program 28. Annual Meeting 29. Lawyer Placement Program 30. Judicial Plebescites & Polls 31. Staff salaries

"*Committees—The Bar Association has the following Committees: Bar-Bench-Press, Certification of Specialists, Civil Rights, Clients Security Fund, Contemporary Problems and Public Interest, Corrections, Court Rules and Procedures, Courts and Judicial Selection, Editorial Advisory Board, Freedom Under Law, Group and Prepaid Legal Services, International Law, Interprofessional, Legal Aid, Legal Education Liaison, Legal Services to the Armed Forces, Law Office Practice, Code of Professional Responsibility, Public Relations, Resolutions, Travel, Unauthorized Practice of Law, Disciplinary Board, Local Administrative & Trial Committees, Legal Internship, Special Task Force on the Criminal Code, Special Task Force on 276, Statute Law Committee, Legislative, Task Force on Professional Utilization, Board of Bar Examiners and Continuing Legal Education.

"**Sections—The following Sections operate within the Bar Association—Administrative Law, Anti-Trust, Corporation, Business & Banking, Creditor-Debtor, Criminal Law, Environmental Law, Family

annual membership fee for inactive members (RCW 2.48.140) and the admission fee of $25 for new attorneys and $50 for those previously admitted in another jurisdiction (RCW 2.48.150), the legislature has expressly sanctioned collection of money from state bar members. Annual dues are collected under the authority of this court, and the existence of a separate statute authorizing the bar to collect the fees does not diminish this court's basic authority to authorize the collection of such dues. *State ex rel. Schwab v. State Bar Ass'n*, 80 Wn.2d 266, 269-71, 493 P.2d 1237 (1972). All other income is obtained either from orders of the Supreme Court authorizing bar examination and investigation fees, costs in disciplinary actions, or voluntary payments by association members for bar-sponsored programs. *See* APR 2, 3; DRA 7.1, 7.2, 11.4.

The traditional purposes for postaudits are not served by an audit of respondent. Postaudits are performed to detect "malfeasance, misfeasance, or nonfeasance in office . . ." RCW 43.09.330. The complete discretion given the Board of Governors in the performance of its duties, outside the areas of admission to the bar and discipline where it acts only in aid to the Supreme Court, leaves the Auditor with no standards to determine whether malfeasance, misfeasance, or nonfeasance have occurred. Therefore, since the purpose of the examination is not served by a postaudit of respondent, we conclude that the legislature did not intend such an extension of the pertinent statutes. Moreover, if the performance audit procedures are inapplicable to respondent, it must be concluded that the postaudit statutes, which employ the same definitions, are inapplicable as well.

The reluctance of respondent to permit the State Auditor to perform a postaudit of its books does not mean it wishes its records to remain closed to any scrutiny. Annual audits of

Law, Intellectual & Industrial Property, Real Property, Probate and Trust, Taxation, Trial Practice and Young Lawyers.

"***Appropriations—These include appropriations for a Law Focused Education Program in the Public Schools, Legal Aid for McNeil Penitentiary, the Public Defender Survey and the Jail Standards Study."

the association's receipts and expenditures have been performed by private certified accountants. The results of these audits have been made known to the members of the bar and the records made available to any who wish to see them. This procedure is in accordance with that followed in many other state bar associations, and the most recent American bar to be integrated has specifically provided for audit by certified public accountants. *In re Unified Bar*, ...... Mont ......, 530 P.2d 765, 771 (1975). Respondent further expressly recognizes in its brief that "it is, at least in part, an arm of this court and will at once submit to any audit the court deems reasonable and necessary." Respondent also has agreed to submit to postaudit those funds it receives as a result of its activities in admitting members to the bar. RCW 2.48.150 requires excess receipts in that fund to be paid to the State Treasurer. The agreement of the association to an audit of the fund to determine whether the proper balances have been remitted, however, is done without waiving its right to object to a postaudit by the Auditor of its other activities.

There is yet another ground that renders petitioner's attempted audit inappropriate. We have earlier made clear that the regulation of the practice of law in this state is within the inherent power of this court. This is the holding of the vast majority of courts in this country that have considered this issue. *See, e.g., Application of Kaufman*, 69 Idaho 297, 302-03, 206 P.2d 528 (1949); *In re Patton*, 86 N.M. 52, 54, 519 P.2d 288 (1974); *Public Serv. Comm'n v. Hahn Transp., Inc.*, 253 Md. 571, 253 A.2d 845 (1969).

In *State ex rel. Schwab v. State Bar Ass'n*, 80 Wn.2d 266, 269, 493 P.2d 1237 (1972), we stated that "this court does not share the power of discipline, disbarment, suspension or reinstatement with either the legislature or the state bar association. The ultimate constitutional power clearly lies within the *sole jurisdiction* of the Supreme Court" and further that "membership in the state bar association and authorization to continue in the practice of law coexist under the aegis of one authority, the Supreme Court." We

also there established that in spite of the language in the State Bar Act, the association was not an "agency of government" so as to be one of the "state executive offices" required by *State ex rel. Lemon v. Langlie,* 45 Wn.2d 82, 273 P.2d 464 (1954) to move their principal place of business to the seat of government. The bar association, we recognized, is an association that is *sui generis,* many of whose important functions are directly related to and in aid of the judicial branch of government. *State ex rel. Schwab v. State Bar Ass'n, supra* at 272.

We have subsequently reaffirmed the fact that the source of the court's power to admit, enroll, disbar, and discipline is exclusively in the Supreme Court as one of its inherent powers. *In re Schatz, supra* at 607. *State v. Cook,* 84 Wn.2d 342, 345, 525 P.2d 761 (1974). This conclusion is bolstered by the fact that in many states the integration of the state bar has been accomplished by order of the Supreme Court of that state, without the necessity of legislative action. By 1971 eight states had integrated their bars by a Supreme Court rule acting under the inherent power to regulate the practice of law, and by necessary inference, the conduct and activities of the bar as an entity. Hourihan, *The Unified Bar,* 38 D.C. B.J. 25, 27 (1971). Nothing in our constitution prohibits this court from the exercise of its inherent power in this manner as well. It was not necessary, therefore, for the legislature to act to accomplish the purposes achieved by the 1933 legislation. The power to accomplish the integration of the bar, its supervision and regulation is found first in this court, not the legislature. The legislature's characterization of the bar as an "agency of the state" does not deprive this court of its right of control of the bar and its functions as a separate, independent branch of government.

In *Sharood v. Hatfield,* 296 Minn. 416, 210 N.W.2d 275 (1973), the Minnesota legislature passed a statute which diverted the registration fees to practice law, provided for by court order, into the general revenue fund of the state and left to legislative discretion the matter of an appropriation to the supreme court for the purpose of regulating the

practice of law. The court rejected this attempted assertion of power by the legislature, holding these provisions regulating the practice of law a constitutionally impermissible assumption of judicial power. It noted that the doctrine of separation of powers " 'not only prevents an assumption by either department of power not properly belonging to it, but also prohibits the imposition, by one, of any duty upon either of the others not within the scope of its jurisdiction . . .' " *Sharood v. Hatfield, supra* at 423. The court recognized that it had acquiesced in legislative acts describing administrative procedures for admission and discipline of attorneys as long as such acts did not usurp the right of the court to make the final decision. It cautioned, however, at page 424, that "when the legislature attempts to go beyond merely indicating what it deems to be desirable, we have not hesitated to strike down such acts as unconstitutional." The court concluded, at page 425, that the regulation of the practice of law and " 'the power to make the necessary rules and regulations governing the bar was intended to be vested exclusively in the supreme court, free from the dangers of encroachment either by the legislative or executive branches.' " It noted that where the bar was integrated by court rule, the court had the authority to "provide by rule for the raising of funds from the members of the legal profession and the expenditure of such funds for regulating the profession without legislative authorization or participation." *Sharood v. Hatfield, supra* at 426.

We believe the legislature did not intend to extend its audit functions to the Washington State Bar Association and that the Auditor has mistaken his legislative mandate. In light of the principles set forth above, however, even if it was the intent of the legislature to so extend its powers, such an attempt is an unwarranted and unconstitutional interference with the power of this separate branch of government to make necessary rules and regulations governing the conduct of the bar.

Judgment affirmed.

STAFFORD, C.J., and HUNTER, HAMILTON, BRACHTENBACH, and HOROWITZ, JJ., concur.

ROSELLINI, J. (dissenting)—Article 3, section 20 of the Washington State Constitution provides, with respect to the state auditor's duties:

The auditor shall be auditor of public accounts, and shall have such powers and perform such duties in connection therewith as may be prescribed by law.

Interpreting this provision in *Yelle v. Bishop*, 55 Wn.2d 286, 347 P.2d 1081 (1959), this court said that, under this provision, the legislature has exclusive discretion to fix, enlarge, or diminish the duties of the Auditor. It was contended in that case that the Auditor had certain inherent powers which could not be taken away by the legislature, but this court rejected that theory and noted that, the constitution being a limitation upon and not a grant of powers to the legislature, its power with respect to the office was plenary. The court noted also that the office is one which the legislature may abolish, if it chooses.

Here, the Auditor does not rely upon any claim of inherent or implied powers. He relies upon an express legislative provision making it his duty to conduct postaudits of all state agencies. RCW 43.09.290 provides:

For the purposes of RCW 43.09.290 through 43.09.340 post-audit means an annual audit of the books, records, funds, and financial transactions of a state department for a complete fiscal period; pre-audit means all other audits and examinations; state department means elective officers and offices, *and every other* office, officer, department, board, council, committee, commission, authority, or *agency of the state government* now existing or hereafter created, *supported, wholly or in part, by* appropriations from the state treasury or funds under its control, or by the levy, assessment, collection, or receipt of fines, penalties, *fees, licenses*, sales of commodities, service charges, rentals, grants-in-aid, *or other income provided by law*, and all state educational, penal, reformatory, charitable, eleemosynary, or other institutions,

supported, wholly or in part, by appropriations from the state treasury or funds under its control.

(Italics mine.)

It will be seen that this provision makes no exceptions. If an organization is in fact an agency of state government and is supported by income provided by law, it is subject to the audit.

Is the integrated bar an agency of state government? It is authorized and provided for as such by statute. RCW 2.48. It exercises delegated powers of both the judicial and legislative branches of state government. It participates in the regulation of the profession (RCW 2.48.060) and prescribes the amount of the license fee (RCW 2.48.130).[3]

In *In re Bruen*, 102 Wash. 472, 477, 172 P. 1152 (1918), this court said:

> The cases are fairly uniform upon the proposition that admitting to practice, suspending, and disbarring are judicial functions. The legislative power, in the interest of uniformity of standard[s] and to remedy and prevent mischiefs in the profession, may regulate and restrict this power, but cannot take it away. *It may provide machinery for the administration of the regulation provided by the legislature, as in carrying into effect such regulations some agency is necessary.*

(Italics mine.)

---

[3]However, it does not perform any adjudicatory function. In *In re Bruen*, 102 Wash. 472, 478-79, 172 P. 1152 (1918), it was said:

> Now, it is evident that, under our constitution, this board may exercise such delegated legislative powers as have been granted to it, which are the examination of applicants for admission to the bar and the prescribing of certain rules; and they are competent to exercise the administrative powers conferred upon them of investigating the conduct of attorneys who have been admitted, to ascertain whether or not they should be permitted to continue to practice their profession, in order that the mischiefs sought to be remedied by the legislature may be remedied and prevented, and may initiate complaints in such cases and hear the evidence, and make reports and findings thereon. But the board is not a court and cannot exercise the functions of a court, except the limited function of passing upon evidence received by them and reporting it. They can make no order striking the name of an attorney from the rolls or disbarring him from practice.

This case has often been cited, albeit most frequently for the principle, with which I have not the slightest quarrel, that the admission, suspension, and disbarment of attorneys are entirely the prerogatives of this court. The statement quoted is in accord with the general rule. 7 C.J.S. *Attorney and Client* § 5 (1937); 1 E. Thornton, *Attorneys at Law* § 29 (1914). In Thornton's treatise, it is said at page 33:

> The judicial function which is exercised in the act of admitting an attorney at law to practice is not to be, as it sometimes is, confused with the right to make reasonable regulations concerning such admissions. In the absence of constitutional authority to the contrary, the legislature undoubtedly has the right to regulate the practice of law, as well as other professions and occupations the regulation of which is for the public welfare.

(Footnote omitted.)

To be entitled to practice law, an applicant must comply with all the conditions required by statute, as well as by rule of court (*In re Ellis*, 118 Wash. 484, 203 P. 957 (1922)) at least to the extent that those statutes do not conflict with the court's rules. *See In re Chi-Dooh Li*, 79 Wn.2d 561, 488 P.2d 259 (1971).

The authority to act with the sanction of government behind the action determines whether or not a governmental agency exists, and the form the agency takes or the functions it performs are not determinative. *Lassiter v. Guy F. Atkinson Co.*, 176 F.2d 984 (9th Cir. 1949); 21 A.L.R.2d 1313 (1952); 73 C.J.S. *Public Administrative Bodies and Procedure* § 6 (1951).

Thus, the bar association is a state agency, not only because it is expressly created and designated as such in RCW 2.48.010, but also because of the functions it performs. The fact that in performing certain functions in connection with the admission and disciplining of attorneys, it acts as an agency of the court, does not make it any less an agency of the state. The court itself is a branch of state government, and it must follow that the agencies which exercise a portion of its delegated power are state agencies. Furthermore, it seems inescapable to my mind that, in exercising

the powers conferred upon it and the duties imposed upon ·it under RCW 2.48, the bar association acts as an agency of the state.

Particularly is this true with respect to its functions in prescribing the amount of the membership fees, collecting those fees, and disbursing them. The admission and membership fees are mandatory. RCW 2.48.130-.180. They are in effect license fees and take the place of those formerly levied directly by the legislature. *See* Rem. Rev. Stat. § 139-20 (P.C. § 173). This court held in *Smith v. Kneisley*, 184 Wash. 26, 49 P.2d 916 (1935), that the legislature has the right to make the payment of such fees a condition of the right to practice law, which, it said, was a franchise given by the state. The duty to pay the registration fees imposed by that statute was also upheld in *State v. Holmes*, 133 Wash. 543, 234 P. 275 (1925).

The general rule is the same. In 1 E. Thornton, *Attorneys at Law* § 63, at 96 (1914), the treatise declares that, in the absence of any constitutional inhibition, it is well settled that the imposition of an occupation tax or license fee upon attorneys at law is entirely within the power of the legislature. E. Weeks, *Attorneys and Counsellors at Law* § 41 (2d ed. 1892), is to the same effect.

In the case of *State ex rel. Schwab v. State Bar Ass'n*, 80 Wn.2d 266, 493 P.2d 1237 (1972), an attorney refused to pay the fee imposed under RCW 2.48.130 in order to precipitate an action in which he could challenge certain programs, practices, and activities of the bar association. It was there contended that the mandatory suspension for nonpayment of dues provided in RCW 2.48.160 amounted to an unconstitutional usurpation of the Supreme Court's power to discipline attorneys and to suspend them from the practice of law. We held that it was not the legislative intent to interfere in any way with the court's exercise of its constitutional power.

There is language in that case which would appear to renounce the principle set forth in *Smith v. Kneisley*, *supra*, and the other authorities I have cited which declare

it to be settled that the legislature has the power to impose license fees and to condition the right to practice upon the payment of such fees. However, no authority was cited in support of that language, and I believe that a careful reading of the opinion will reveal that it was unnecessary to the decision. It was only necessary to state that any suspension pursuant to the statute is subject to judicial review.

I must admit that I signed the majority opinion, but subsequent research and reflection have convinced me that the concurring opinion of Hale, J., more accurately states the law with respect to the coexisting powers of the court and the legislature.

The majority in this case does not question the legislative power to authorize the bar to collect annual membership fees and to spend the proceeds.

In any event, whether the fees are collected pursuant to statute, or pursuant to delegated court power, as the dictum in *Schwab* would indicate, the Board of Governors, in collecting those fees, acts as an agent of the state. It is altogether fitting, appropriate, and in no sense an interference with the judicial power that the records concerning the funds thus collected should be subject to the scrutiny of the State Auditor. They are public accounts. In *State v. Merrill*, 83 Wash. 8, 14, 144 P. 925 (1914), this court held that even the accounts of a savings and loan association are properly subject to examination by the State Auditor pursuant to statute. The court stated that such associations are "public associations doing business with the public, as banks, insurance companies and other trust companies, and are subject to regulation on the same theory that these other trust companies are subject to lawful regulation."

If commercial enterprises such as these are sufficiently public in nature to justify subjecting their accounts to a state audit, it should be beyond question that the financial affairs of the legislatively authorized organization of the legal profession (a profession whose duty to the public is as great as its duty to the courts) should also be open to the

Auditor's scrutiny. As this court aptly said in *Smith v. Kneisley, supra* at 31-32:

> If any one class of persons more than another should be pleased to respect and obey the law, it is the lawyers, because of their peculiar and honorary relation to the administration of the law.

The function of the Auditor is purely ministerial. It is in no sense judicial. He simply examines the records to see what has occurred and reports the facts accordingly. If someone whose rights were involved were inclined to take issue with his findings, he could challenge them in court, I would imagine, and a justiciable issue might then be presented.

The judicial power is the power to hear and determine controversies—the power to adjudicate. *Tacoma v. O'Brien*, 85 Wn.2d 266, 534 P.2d 114 (1975). If the auditor performs an adjudicatory function, he performs such a function wherever he audits, not merely when he audits the accounts of the bar association. But it cannot be that his function is unconstitutional, for the constitution itself expressly authorizes it.

The fact that the three branches of state government exercise different functions does not mean that they are entirely divorced from each other—that one cannot affect the other in any way. The legislature is the body which is constituted to decide upon public policy and make the laws, but those laws are all subject to modification by the court, which has assumed, out of necessity, the power to interpret the laws and to declare their constitutionality. In doing so, it affects legislation, in greater or lesser degrees.

Also, the court must depend upon the executive to enforce its decrees, and it must depend upon the legislature to provide the funds necessary for its existence and functioning.

The interdependence of the branches of government, the shading of functions, is of course much more extensive and complex than this. But I think these examples should be sufficient to show that the court cannot isolate itself or

its agents from the other branches. I do not quarrel with the notion that the court should be diligent in preserving the integrity of the judicial function, but I do not believe that function is involved in this controversy. The court's power with respect to attorneys is the power to admit, to discipline, and to disbar. *In re Bruen,* 102 Wash. 472, 172 P. 1152 (1918). Inherent in this power is the power to prescribe qualifications and standards. But the imposing of license fees is a legislative function. The collecting and disbursing of them pursuant to statutory authority are administrative functions, not judicial functions. The auditing of accounts is a function of the executive branch.

This court has always submitted without question to the auditing of its accounts, and rightly so, since the funds spent by the court are provided by the people, acting through the legislature. If the court itself is properly subject to the Auditor's scrutiny, how much more so is one of its agencies, which merely exercises administrative powers and which collects and expends fees under public authority.

The auditing of the accounts of the state bar association is no more an interference with the functioning of this court than is the auditing of the accounts of the land commissioner's office an interference with the executive. If auditing is interfering, it is an interference authorized and sanctioned by the constitution. In providing for the auditing of public accounts, the constitution excludes no department of government.

I can perceive no basis in legal principle and have found no precedent to support the majority's decision herein. The suggestion that, because a performance audit of the bar association is not authorized under RCW 43.88.160, a postaudit is not authorized or required under RCW 43.09.290, ignores the obvious difference between the two statutes. RCW 43.88.160, by its terms, applies only to the executive branch. (I think the majority will agree with me that the bar association is not an agency of that department.) RCW 43.09.290 contains no such limitation. In unmistakable lan-

guage it is made applicable to *all* officers, departments, agencies, etc., holding the type of funds designated therein. The Washington State Bar Association falls within its very broad embrace.

I would grant the writ.

WRIGHT, J., concurs with ROSELLINI, J.

Petition for rehearing denied June 29, 1976.