

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| DELVONN HECKARD, | ) | No. 77019-5-I |
| | ) | |
| Plaintiff, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| MAYOR EDWARD MURRAY, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| LINCOLN BEAUREGARD, | ) | |
| | ) | |
| Appellant. | ) | FILED:  October 8, 2018 |

LEACH, J. — Lincoln Beauregard appeals the trial court's imposition of CR 11 sanctions against him.  The trial court found that Beauregard filed documents with the court for the improper purpose of generating publicity in violation of CR 11.  Beauregard claims that he did nothing that could serve as a basis for a CR 11 violation.  We disagree and affirm.

## FACTS

This politically charged case began on April 6, 2017, when Delvonn Heckard, through Beauregard, filed this lawsuit against Edward Murray.  At the time, Murray was the elected mayor of Seattle, serving the last year of his term and planning to run for reelection.  The candidate filing period for this election ran from May 15 to May 19, 2017.  Heckard alleged that Murray had paid him for sex

while Heckard was a minor. Anticipating claims of political motivation, Beauregard also asserted,

> Natural speculation would lead some people to believe that D.H.'s actions are politically motived—which is not exactly true. In this regard, D.H. is disturbed that Mr. Murray maintains a position of trust and authority, and believes that the public has a right to full information when a trusted official exploits a child. To the extent that D.H. has any political motivations for outing Mr. Murray, they stop there.

That same day, Murray's attorney, Robert Sulkin, hosted a press conference on Murray's behalf and publicly denied the allegations against Murray. The next day, Beauregard sent Sulkin a letter stating that Heckard was available for a video deposition. On April 9, Beauregard sent Sulkin another letter asking about discovery and service of process. Sulkin did not reply to either letter.

On April 11, Sulkin called another press conference. He stated that the lawsuit was meritless and Heckard's claims were part of an "anti-gay political conspiracy." On April 12, Beauregard had the summons and complaint served on Murray. On April 14, a Seattle newspaper, The Stranger, published a Murray op-ed stating that the accusations were false and made to advance an anti-gay political agenda.

On April 17, the assigned judge's bailiff advised Beauregard, other counsel of record, and Sulkin of the judge's availability that week "should counsel

wish to address preliminary matters and for planning purposes." The same day, Beauregard filed an affidavit of prejudice against the assigned judge. The next day, The Stranger quoted Sulkin saying that Beauregard and his firm were "question[ing] the integrity of [the] highly regarded judge [assigned to the case]" and the "integrity of a highly respected doctor [who examined Murray and] whose conclusions undermine their claim." The case was reassigned to another judge.

On April 19, Heckard filed an amended complaint. Beauregard attached to this complaint a letter to Sulkin commenting on the press conferences, the fact that Sulkin had not yet filed a notice of appearance, and Sulkin's statements about Beauregard taking issue with the judge originally assigned to the case. Beauregard and his firm also began copying select documents to the trial court file.

Over the course of the proceedings, in addition to the letter attached to the amended complaint, Beauregard filed with the trial court a number of letters addressed to Sulkin and subpoenas and/or notices of deposition to three individuals, including Murray, and the City of Seattle/Seattle Police Department. In Beauregard's original, amended, and second amended subpoena and notice of deposition to Murray, he described some topics he intended to explore when questioning Murray:

> [These include] potential causes of the medical matters referenced publicly by [Murray's] attorneys in a news conference on April 11,

2017. Those medical causes could include multiple medical complications stemming from having promiscuous sex with multiple child prostitutes. Bumps, warts, and/or moles do not always remain 30-years, depending upon the root cause. Mr. Murray will also be asked about the prior use of campaign funds to extinguish the voices of other victims, and all other topics related to this lawsuit.

The Seattle Times published articles about one of the subpoenas and/or notices of deposition and matters discussed in the correspondence that Beauregard filed. Sulkin filed a notice of appearance on April 21. He also sent Beauregard a letter asking that Beauregard stop filing with the court correspondence addressed to him. Beauregard did not.

On April 25, Murray asked the court to sanction Beauregard "under CR 11 and the Court's inherent authority for wrongly filing documents for an improper purpose." Beauregard responded to the request, and Murray replied to this response. On May 4, the trial court held a hearing to announce its oral decision. It did not permit oral argument. Neither party objected to the court's decision not to permit oral argument. Beauregard did not ask the court to reconsider its decision to proceed without oral argument and has not assigned error to this decision.

The court found that Beauregard filed the documents at issue for an improper purpose in violation of CR 11 and imposed $5,000 in sanctions. Beauregard promptly paid the sanctions into the registry of the court. In June 2017, after Heckard voluntarily dismissed his lawsuit without prejudice,

Beauregard appealed the sanctions order. The parties completed briefing the appeal in November 2017.

In January 2018, the parties entered into a settlement agreement. As part of the settlement, Murray agreed to stipulate to an order vacating the trial court's sanctions order. The trial court denied a request to enter the proposed agreed order and also ordered the disbursal of the $5,000 in sanctions to the King County Bar Foundation.

Beauregard asked this court to void the trial court's order denying the request to vacate the sanctions order. A commissioner of this court denied this request but stayed the portion of the trial court's order disbursing the funds. Beauregard then amended the notice of appeal to include the trial court's order denying the request to vacate the sanctions order. Neither party requested nor provided supplemental briefing.

ANALYSIS

Beauregard challenges the scope of the issues and materials considered by the trial court and the merits of its sanctions decision. We address his challenges in this order.

Scope of Materials and Issues Considered by the Trial Court

Beauregard claims that the trial court should not have considered Murray's claims that Beauregard violated RPC 3.6 and CR 5(i) and supporting expert

declarations because Murray raised these arguments for the first time on reply. Murray responds that this court should decline to review this claim because Beauregard did not preserve it for appeal. An appellate court may refuse to review any claim of error that a party did not raise in the trial court unless one of three exceptions applies.[1] Because Beauregard did not object, he did not preserve the issue for appeal.

Also, to the extent that the trial court may have considered material it should not have, Beauregard has not shown that he was prejudiced. So any error was harmless. King County Super. Ct. Local Civ. R. (KCLR) 7(b)(4)(G) states, "[A]ny reply material which is not in strict reply[ ] will not be considered by the court over objection of counsel except upon the imposition of appropriate terms, unless the court orders otherwise." Moreover, "[r]ebuttal documents are limited to documents which explain, disprove, or contradict the adverse party's evidence."[2]

Beauregard asserts that Murray violated KCLR 7(b)(4)(G) by claiming for the first time in his reply brief and supporting declarations that Beauregard violated RPC 3.6 and CR 5(i). The application of court rules is a question of law that an appellate court reviews de novo.[3]

---

[1] RAP 2.5(a).
[2] White v. Kent Med. Ctr., Inc., P.S., 61 Wn. App. 163, 168-69, 810 P.2d 4 (1991).
[3] Kim v. Pham, 95 Wn. App. 439, 441, 975 P.2d 544 (1999).

Murray's request for sanctions stated that Beauregard's challenged conduct was "inconsistent with CR 7 and the Rules of Professional Conduct." Indeed, the request did not mention either RPC 3.6 or CR 5(i). But Beauregard's response claimed that Murray's counsel was "unable" to cite any rule that he violated. Beauregard also stated that RPC 3.6 gave him license to "publicly discuss matters that have been filed with the Court." In direct reply to this argument, Murray responded that Beauregard violated RPC 3.6.

Beauregard also claimed in his response that there is "no rule that precludes filing discovery related correspondence and/or subpoenas." Again, in direct response, Murray asserted that Beauregard violated CR 5(i), which generally forbids filing discovery documents with the court.

Murray also submitted with his reply two expert ethics witnesses' declarations supporting his claims that Beauregard violated RPC 3.6 and CR 5(i). We conclude that Murray's counterarguments in his reply brief sufficiently answered Beauregard's arguments. The expert declarations, however, were not necessary to "explain, disprove, or contradict" Beauregard's claims and were outside of the scope of a "strict reply." Even so, the trial court's consideration of these declarations was harmless. The trial court did not find that Beauregard violated RPC 3.6, as discussed below, so it did not rely on the declarations to support its decision.

## CR 11 Sanctions

Beauregard next claims that the trial court abused its discretion by imposing sanctions under CR 11 because no rule prohibits an attorney from filing with the trial court correspondence addressed to opposing counsel or subpoenas and/or notices of deposition. We disagree. Beauregard's conduct violated CR 5(i) and CR 11.

CR 11 requires that attorneys sign all pleadings, motions, and legal memoranda. This signature constitutes the attorney's certification that to the best of the attorney's "knowledge, information, and belief," formed after a reasonable inquiry, the pleading, motion, or memorandum is

> (1) . . . well grounded in fact; (2) . . . warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law; [and] (3) . . . not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.[4]

If an attorney signs a pleading, motion, or memorandum in violation of this rule, "the court, upon motion or upon its own initiative, may impose upon the person who signed it . . . an appropriate sanction."[5] An appellate court reviews a trial court's imposition of CR 11 sanctions for an abuse of discretion.[6] A trial court abuses its discretion when "the decision is manifestly unreasonable or

---

[4] CR 11(a)(1)-(3) (emphasis added).
[5] CR 11(a)(4).
[6] Biggs v. Vail, 124 Wn.2d 193, 197, 876 P.2d 448 (1994).

exercised on untenable grounds or for untenable reasons."[7]  When reviewing CR 11 sanctions, an appellate court "must keep in mind that '[t]he purpose behind CR 11 is to deter <u>baseless</u> filings and to curb abuses of the judicial system.'"[8]

At issue here is whether Beauregard filed documents for an improper purpose.  Beauregard claims that the trial court did not "find, precisely" what was the improper purpose.  When a trial court imposes CR 11 sanctions, it must "specify the sanctionable conduct in its order" and make a finding that the document is either not grounded in fact or law or the attorney filed the document for an improper purpose.[9]  The written findings requirement exists to allow the appellate court to review the issues raised on appeal, so a trial court's failure to enter written findings does not require reversal "where the court's comprehensive oral ruling is sufficient to allow appellate review."[10]

Here, the trial court stated,

> In reviewing these documents, the court finds troubling not only the subject matter of the filings proffered by the plaintiff, but the manner in which this occurred.
>
> Plaintiff was clearly aware that his behavior was the subject of a motion, and, nevertheless, willfully and with a flagrant disregard for established legal norms, continued to file documents that were irrelevant to the matter before the court, nonresponsive to

---

[7] <u>State v. Ancira</u>, 107 Wn. App. 650, 653, 27 P.3d 1246 (2001).

[8] <u>Biggs</u>, 124 Wn.2d at 197 (quoting <u>Bryant v. Joseph Tree, Inc.</u>, 119 Wn.2d 210, 219, 829 P.2d 1099 (1992)).

[9] <u>Biggs</u>, 124 Wn.2d at 201.

[10] <u>State v. Bynum</u>, 76 Wn. App. 262, 266, 884 P.2d 10 (1994).

> the pleadings at issue, and for the sole purpose and intent—apparent intent of generating publicity that has the potential of prejudicing the administration of justice.
>
> Therefore, the defense motion for sanctions pursuant to CR 11 is granted. The court is imposing sanctions in the amount of $5,000.

Although the trial court did not make written findings specifying the sanctionable conduct, its oral ruling makes clear that it found Beauregard filed the documents at issue for the improper purpose of "generating publicity that has the potential of prejudicing the administration of justice."

Beauregard next claims that he did not violate CR 11 because filing documents to generate pretrial publicity does not violate RPC 3.6 or any other civil rule and is not an improper purpose. We disagree.

*A.    RPC 3.6*

Beauregard contends that the trial court erred in using an RPC 3.6 violation as a basis for imposing CR 11 sanctions because he did not violate RPC 3.6.

The relevant provisions of RPC 3.6 are as follows:

> (a) A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.
> (b) Notwithstanding paragraph (a), a lawyer may state:
>     . . .
> (2) information contained in a public record.

RPC 3.6 restricts lawyers' extrajudicial communications with the media. In its oral ruling, the trial court explained that RPC 3.6(b)(2) exempts lawyers from these restrictions if they state information contained in a public record. The court stated, "Unless specifically sealed by a court, items contained in court files are matters of public record." And Beauregard filed the documents at issue in the trial court file. After implicitly recognizing that Beauregard's conduct may qualify under an exception clause of RPC 3.6., the court did not frame the issue as whether his extrajudicial statements were proper. Rather, the court defined the issue as a "question of what documents are properly filed before this court." The court did not find that Beauregard violated RPC 3.6.

B.    CR 5(i)

Beauregard also contends that he did not violate CR 5(i). With limited exceptions, CR 5(i) prohibits parties from filing discovery material with the court:

> Depositions upon oral examinations, depositions upon written questions, interrogatories and responses thereto, requests for production or inspection and responses thereto, requests for admission and responses thereto, and <u>other discovery requests and responses thereto shall not be filed with the court unless for use in a proceeding or trial</u> or on order of the court.

(Emphasis added.)

First, Beauregard claims that he did not violate CR 5(i) because it does not prohibit filing with the court correspondence to opposing counsel or subpoenas and/or notices of deposition when counsel believes he must do so to

-11-

make a record. Beauregard asserts that he was justified in filing with the court the documents at issue to make a record on two grounds: (1) Sulkin did not file his notice of appearance stating that he was Murray's counsel until two weeks after Heckard filed his lawsuit and (2) Sulkin did not respond to either of the two letters that Beauregard sent him within three days of Heckard filing his lawsuit.

Beauregard relies on Gronquist v. Department of Licensing[11] to support the proposition that the CR 5(i) filing restrictions do not apply when a party believes it is necessary to file select documents to make a record. Gronquist, however, does not support this proposition.

Gronquist sought review of the trial court's refusal to allow him to file deposition transcripts that he claimed supported his pending motions and undermined the opposing party's motion for summary judgment. Division Two of this court held that Gronquist was entitled to file the depositions, but the court did not decide that a need to make a record overrode the restrictions of CR 5(i).[12] Instead, the court reasoned that CR 5(i) permitted the filing of the depositions because they were "'for use in a proceeding or trial or on order of the court.'"[13]

Alternatively, Beauregard contends that similar to Gronquist, CR 5(i) permits filing the documents at issue because they related to upcoming motions

---

[11] 175 Wn. App. 729, 309 P.3d 538 (2013).
[12] Gronquist, 175 Wn. App. at 759.
[13] Gronquist, 175 Wn. App. at 759 (quoting CR 5(i)).

practice about scheduling depositions, Murray's deposition questions, and contested subpoenas. But these documents did not relate to any pending motions when Beauregard filed them. No discovery disputes had arisen. No party had sought relief through a pending motion.

The trial court did not expressly find that Beauregard violated CR 5(i). But it explained that "[CR 5(i)] indicates that discovery materials [are] not to be filed except with certain exceptions, none of which exist in this instance." We conclude that Beauregard filed notices of deposition in contravention of CR 5(i), which specifies that "other discovery requests . . . shall not be filed with the court unless for use in a proceeding or trial." Further, CR 26(h) states, "A party filing discovery materials . . . for use in a proceeding or trial shall file only those portions upon which the party relies."

Although the subpoenas and/or notices of deposition Beauregard filed related to this case, unlike in Gronquist, the court did not have before it any pending proceeding where these documents supported or undermined a request for relief. Beauregard was not relying on them for "use in a proceeding or trial" as CR 5(i) and CR 26(h) require. Because Beauregard violated CR 5(i), the court did not abuse its discretion by considering CR 5(i) when making its determination that Beauregard filed documents with the court for an improper purpose in violation of CR 11.

C.    *Improper Purpose*

Beauregard casts doubt on the trial court's statement that he filed the documents at issue with the "apparent intent of generating publicity" and alternatively claims that if he did file the documents to generate publicity, this was not an improper purpose.

First, Beauregard has acknowledged that he filed with the court correspondence addressed to Sulkin and subpoenas and/or notices of deposition to allow the press access to them and to combat Sulkin's press conferences. In opposition to Murray's motion for sanctions, Beauregard filed a letter with the trial court addressed to Sulkin stating, "On the merits, your motion's express purpose is to intimidate us from making the record that we deem appropriate. By law, you are effectively asking the Court to seal the files from public view by way of unlawful strong arm tactics." And in his response to Murray's motion, Beauregard stated that he was "abundantly aware that the media [was] watching this lawsuit. In full accord with Washington's public policy favoring an open court system, when reporters have questions about the status of the litigation, the undersigned attorneys avoid hosting press conferences and, instead, just refer interested individuals to the filings of record." He also stated, "In order to keep a proper record, the undersigned attorneys began filing correspondence with the Court to ensure that the litigation history was properly crystalized, and whatever

lawyers ever finally filed a Notice of Appearance would have full information." Beauregard makes clear that he filed the documents at issue to help facilitate the media's access to them. He does not claim that the court needed to review these documents to resolve any pending request for relief.

Second, filing documents with the court for the purpose of generating publicity is an improper purpose. The court file is not a bulletin board for attorneys to post information for the press. Neither is it an archive for communications between lawyers. It exists so attorneys may provide the court with documents relevant to the proceedings pending before it so that the court can consider this information when resolving a request for relief. Attorneys may communicate with the press through a number of avenues. But the court file does not exist for the purpose of facilitating this communication. Beauregard's written statements provide sufficient support for the trial court's conclusion that he filed the documents for the improper purpose of generating publicity.

Beauregard also cites the drop-down menu provided online by the King County Clerk for electronic filings to justify his actions. This menu provides a path for filing subpoenas and correspondence. But this menu does not purport to provide litigants with advice about what documents they may properly file with the court. As noted above, when subpoenas and correspondence are relevant to a pending request for relief, the applicable rules permit filing them. Beauregard's

-15-

argument fails to consider this threshold criteria. He also fails to provide any authority supporting his implicit assumption that this drop-down menu could modify the requirements of applicable court rules.

At oral argument, Beauregard's counsel questioned the trial court's decision not to hear oral argument before deciding the sanctions motion, particularly given the significance of the imposition of sanctions. But Beauregard did not object to this procedure at the trial court, did not assign error to it, and did not discuss it in his briefing. We decline to consider an issue raised for the first time at oral argument.

## First Amendment

Last, Beauregard asserts that sanctions based on his alleged violation of RPC 3.6 violated his First Amendment rights because the trial court retroactively punished him for his media contacts without finding that his actions created a demonstrable, substantial likelihood that the trial of the case would be materially prejudiced as a result of his conduct. This court reviews constitutional issues de novo.[14]

"Under the First Amendment, [no limitation on counsel's speech] is permissible unless the court finds there is at least 'a reasonable likelihood that

---

[14] State v. Clark, 187 Wn.2d 641, 649, 389 P.3d 462 (2017).

pretrial publicity will prejudice a fair trial.'"[15]   Because we decide that the trial

court did not find that Beauregard violated RPC 3.6, we do not review this claim

as it relates to an RPC 3.6 violation.   And the trial court did not retroactively

punish Beauregard for his media contacts.

First, Beauregard had notice that if he continued to file with the court the

documents at issue, his behavior would be subject to a sanctions request.  Sulkin

wrote to Beauregard asking him to stop filing letters addressed to him, "Please

confirm you will no longer file letters to me with the Court.  If no such confirmation

is immediately forthcoming, we will be forced to take appropriate action."  Still,

Beauregard continued to file letters addressed to Sulkin.  The trial court noted

this in its ruling.

Second, the trial court did not restrict Beauregard's ability to communicate

with the media by way of press conference or any other permissible avenue.  It

did not restrict the content of his communications with the media.  It did not

sanction him for the content of his communications.  Instead, it sanctioned him

for improper use of the court file.  After the trial court imposed sanctions, it did

enter an order governing media coverage in the courtroom.  But Beauregard

---

[15] State v. Bassett, 128 Wn.2d 612, 615-16, 911 P.2d 385 (1996) (holding that pretrial orders limiting counsel's ability to communicate with the media violated the First Amendment because it was a prior restraint on speech, which was presumptively unconstitutional) (internal quotation marks omitted) (quoting In re Dow Jones & Co., 842 F.2d 603, 610 (2nd Cir. 1988)).

does not appeal this order. The trial court did not violate Beauregard's First Amendment rights by imposing CR 11 sanctions.

## Attorney Fees

Murray asks that this court award him attorney fees under RAP 18.9 because Beauregard's appeal was frivolous. "RAP 18.9(a) permits an appellate court to award a party attorney fees . . . when the opposing party files a frivolous action. An appeal is frivolous if . . . the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ."[16] Here, although Beauregard's claims lack merit, they are not frivolous. We deny Murray's request for attorney fees.

## The Trial Court's Denial of the Parties' Stipulated Motion To Vacate

Beauregard also appeals the trial court's January 2018 order denying the parties' stipulated motion to vacate the sanctions order. Because the trial court did not abuse its discretion by imposing sanctions, it did not abuse its discretion by denying the parties' motion to vacate the sanctions order. The fact that the parties stipulated to the motion to vacate does not make it binding on the court.[17]

---

[16] Advocates for Responsible Dev. v. W. Wash. Growth Mgmt. Hr'gs Bd., 170 Wn.2d 577, 580, 245 P.3d 764 (2010).

[17] Folsom v. County of Spokane, 111 Wn.2d 256, 261, 759 P.2d 1196 (1988) (recognizing the "long-standing rule that stipulations of law are not binding").

## CONCLUSION

The trial court did not abuse its discretion by imposing CR 11 sanctions after finding that Beauregard filed documents with the court for the improper purpose of generating pretrial publicity. We affirm.

Leach, J.

WE CONCUR:

Schindler, J.                    Becker, J.